**ADMIRAL CORP. v. PENCO, Inc.**

No. 173, Docket 22540.

United States Court of Appeals
Second Circuit.

Argued March 11, 1953.

Decided April 1, 1953.

See also 101 F.Supp. 677.

Gerrit P. Groen, Chicago, Ill. (James R. Oberly, Chicago, Ill., and Charles Shepard, Rochester, N. Y., on the brief), for plaintiff-appellant.

A. D. Caesar, Philadelphia, Pa. (Max R. Millman, Philadelphia, Pa., and Marvin L. Falk, Rochester, N. Y., on the brief), for defendant-appellant.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

In this action plaintiff accused the defendant of trade-mark infringement and unfair competition in the defendant's use of the word "Admiral" on its products. Plaintiff, upon institution of suit, sought a preliminary injunction, which Judge Burke granted to the extent of requiring defendant to disclaim any connection between its goods and plaintiff and to take other steps to guard against deception of customers. Admiral Corp. v. Penco, Inc., D.C.W.D. N.Y., 101 F.Supp. 677. Then after a full trial he eventually found for the plaintiff, D.C.W.D.N.Y., 106 F.Supp. 1015, granting it a permanent injunction of yet more complete character, based upon findings of trade-mark infringement, unfair competition, and deliberate palming off by defendant of its products under the trade-mark "Admiral." Deeming defendant's action flagrant, he also awarded, in addition to ordinary costs, an extra sum of $2,000 for attorney's fees. But since the products of the two companies were not the same and no material damage had as yet been sustained by the plaintiff to its reputation or good will or through loss of sales, the court denied plaintiff an accounting for profits. Both parties have appealed.

Judge Burke's opinion cited above sets forth the facts clearly and succinctly, and we shall assume familiarity with it. Plaintiff owns and operates numerous manufacturing plants throughout the United States and maintains distributors in this country and throughout the world. It now manufactures or distributes television sets, radios, radio-phonograph combinations, refrigerators, electric ranges, and some miscellaneous appliances and parts. Defendant has an office and store in Rochester, and operates stores in Elmira, Binghamton, Syracuse, and Buffalo—all in New York state. It does not manufacture the products it sells, which are electric vacuum cleaners, electric sewing machines, electric floor polishers, and parts for these appliances. It sells only at retail, principally to housewives and in homes. Defendant buys its vacuum cleaners in Chicago and they are shipped either to its affiliate, Price

Vacuum Stores, Inc.,[1] in Philadelphia, or direct to defendant's stores in New York state. Defendant's sewing machines are imported from Japan, where the trade-mark "Admiral" is affixed. They, too, are delivered to Price Vacuum in Philadelphia and shipped from there to defendant's stores in New York state.

"Admiral" was first adopted by Columbia Radio Corporation as its mark for radios in October, 1929. In 1936, Columbia assigned the trade-mark, with its good will, to Continental Radio and Television Corporation, which had been incorporated in 1934 and which in 1943 changed its name to Admiral Corporation. "Admiral" has been used as its house mark since 1939 and has since been in continuous use as the dominant trade-mark for all its products. Current annual sales exceed $200,000,000. Since the adoption and use of the trade-mark "Admiral," plaintiff has sold in excess of $1,000,000,000 worth of its products valued at retail under the trade-mark "Admiral" and has spent approximately $47,000,000 in thus advertising its goods. Its products are sold throughout the world. Its trade-mark "Admiral" has been registered in the United States and thirty foreign countries. It is the world's largest manufacturer of television sets. It has a large research staff and a sales organization of 81 distributors and over 31,000 dealers. Its products have attained general and wide acceptance and a reputation for quality.

Defendant did not use the trade-mark "Admiral" for its electric sewing machines and vacuum cleaners until early 1950 or long after the plaintiff began its world-wide use. Before that, defendant had used the trade-mark "Avalon" to identify its vacuum cleaners. It then adopted the mark "Admiral" because, as Price, its president, testified: "We thought 'Admiral' was a much nicer name as far as we were concerned. It meant tops in something. It meant the best of things, the tops of something. We thought it would be more receptive." Defendant did not advertise these products, but consistently advertised rebuilt Singer sewing machines and Electrolux vacuum cleaners at a very low price for the purpose, as the court found, "of securing leads to sell its Admiral machines." 106 F. Supp. at page 1018. The court also goes into the testimony from purchasers of defendant's products as to failure to distinguish its products from plaintiff's, concealment of the stamp "Made in Japan" on the sewing machine, and other practices of this sort which, it found, induced actual confusion.[2]

In addition to contesting the jurisdiction of the court, defendant relies upon its right to share in the use of plaintiff's symbol, asserting (1) that the parties were not in competition, since the goods were not the same, but were "radically different"; (2) that the defendant adopted the mark only after a careful search disclosed that it was available, since it was being used generally for various products; and (3) that the mark "Admiral" is a technically weak, "self-praise mark," which was registered some 35 times in the United States Patent Office to persons other than the plaintiff for a wide variety of goods, and hence not considered exclusive by the Patent Office,

1. Jack Price, defendant's president and sole stockholder, is president and majority stockholder of Price Vacuum. Defendant's activities are controlled from these Philadelphia offices where its records are kept. Most of defendant's product is shipped to it from Philadelphia.

2. This appears most pointedly in Finding of Fact 24: "Several of defendant's customers, in and about Rochester, New York, have purchased either electric vacuum cleaners or electric sewing machines bearing the trademark Admiral from defendant, believing that such appliances were manufactured by or originated with plaintiff. The belief of such customers that defendant's products were manufactured by or originated with plaintiff was based either on the affirmative acts of defendant's salesman who either stated or clearly implied that defendant's products originated with the plaintiff, Admiral Corporation, or it was based on the consumer's conclusion that an electrical appliance such as a vacuum cleaner or sewing machine bearing the trade mark Admiral would naturally originate with the Admiral Corporation."

which had accepted and published the applications of defendant's parent company for the registration of the mark "Admiral" on sewing machines and vacuum cleaners. It also asserted that the evidence did not establish any deliberate misrepresentation by it of the origin of its sewing machines and vacuum cleaners.

[1] We must first consider defendant's objection to the court's jurisdiction, although this contention is utterly lacking in merit. There was in any event diversity of citizenship of the parties; and the court found the amount involved to exceed $3,000 —a finding which is clearly supported by the evidence as to the plaintiff's business investment safeguarded in this action. The ground actually taken by the court was that of trade-mark infringement under 28 U.S.C. § 1338, where no jurisdictional amount is required. Applicable also is the express grant of the Lanham Trade-Mark Act, 15 U.S.C. § 1121. The requirement, 15 U. S.C. §§ 1114, 1127, that the infringing use shall be in commerce which is subject to congressional regulation is manifestly satisfied, since defendant transported its marked goods in interstate commerce from manufactory to sales outlet. Ironite Co. v. Guarantee Waterproofing Co., 8 Cir., 64 F.2d 608. Hence it is not necessary to consider the interesting question discussed in Dad's Root Beer Co. v. Doc's Beverages, 2 Cir., 193 F.2d 77, 79–82, whether interference with plaintiff's use in interstate commerce is sufficient. Since defendant makes some gestures, noted below, toward attempted nullification of plaintiff's trademark, we should point out that there is clearly pendent jurisdiction for the claim of unfair competition under 28 U.S.C. § 1338(b). Telechron, Inc. v. Parissi, 2 Cir., 197 F.2d 757. In view of all this, we need not discuss the question—also adverted to in Dad's Root Beer Co. v. Doc's Beverages, supra—whether the Lanham Act grants new and more extensive jurisdiction over

unfair competition, as held in Stauffer v. Exley, 9 Cir., 184 F.2d 962.

■ On the merits the decision below seems clearly correct. The controlling principle is now succinctly stated in statutory form as imitating use "likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services." 15 U.S.C. § 1114(1).[3] While this statute of course now governs, S. C. Johnson & Son v. Johnson, 2 Cir., 175 F. 2d 176, 178, certiorari denied 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527, the same rule was applied earlier. See, e. g., Landers, Frary & Clark v. Universal Cooler Corp., 2 Cir., 85 F.2d 46; Aunt Jemima Mills Co. v. Rigney & Co., 2 Cir., 247 F. 407, certiorari denied 245 U.S. 672, 38 S.Ct. 222, 62 L.Ed. 540; Standard Brands v. Smidler, 2 Cir., 151 F.2d 34, 37; Triangle Publications v. Rohrlich, 2 Cir., 167 F.2d 969; Stork Restaurant v. Sahati, 9 Cir., 166 F.2d 348, 354, 355; 3 Restatement, Torts §§ 730, 731 (1938). It is not necessary to show actual cases of deception or confusion, since the test is the likelihood of such confusion. Pastificio Spiga Societa per Azioni v. De Martini Macaroni Co., 2 Cir., 200 F.2d 325; Miles Shoes, Inc. v. R. H. Macy & Co., 2 Cir., 199 F.2d 602, certiorari denied 345 U.S. 909, 73 S.Ct. 650; LaTouraine Coffee Co. v. Lorraine Coffee Co., 2 Cir., 157 F.2d 115, 117, certiorari denied 329 U.S. 771, 67 S.Ct. 189, 91 L. Ed. 663; George W. Luft Co. v. Zande Cosmetic Co., 2 Cir., 142 F.2d 536, certiorari denied 323 U.S. 756, 65 S.Ct. 90, 89 L.Ed. 606. Here, however, there was evidence of actual confusion and the case was thoroughly proven.

■ Nor are defendant's answers persuasive. As clearly appears from the cases cited above, the fact that the products are not identical does not excuse if they are sufficiently similar to make confusion likely. Both plaintiff and defendant were marketing usual electrical household products;

---

**3.** The relevant portion of that section provides: "Any person who shall, in commerce, (a) use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of any registered mark in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services."

it cannot be said that electric ranges and refrigerators are so compartmentalized from electric sewing machines and vacuum cleaners that housewives would not (as they did) think that the name "Admiral" applied to all signified a single source of origin. See also L. E. Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272, 273; Yale Electric Corp. v. Robertson, 2 Cir., 26 F.2d 972, 974; Hanson v. Triangle Publications, 8 Cir., 163 F.2d 74, 78, certiorari denied 332 U.S. 855, 68 S.Ct. 387, 92 L.Ed. 424; Sunbeam Corp. v. Sunbeam Lighting Co., D.C. S.D.Cal., 83 F.Supp. 429; Lady Esther v. Lady Esther Corset Shoppe, 317 Ill.App. 451, 46 N.E.2d 165, 148 A.L.R. 6, with annotation 12–125. On the other hand, the various Admiral trade-marks issued to others, upon which defendant relies to show a nonexclusive right in plaintiff, applied to entirely different types of commodities: automotive products and motor fuels; alcoholic beverages; food, clothing, and fabrics; and various miscellaneous products ranging from anchors to smoking tobacco and bicycles. Moreover, as the plaintiff says, these are mere third-party uses, perhaps substantially or wholly wrongful and inadequate to justify defendant's wrongful use. Ward Baking Co. v. Potter-Wrightington, 1 Cir., 298 F. 398, 402; Bond Stores, Incorporated v. Bond Stores, Inc., 3 Cir., 104 F.2d 124, 125. And finally we have here the findings of actual and intended deception which we find supported by the evidence.

After the trial the defendant filed a motion below asking for the withholding of judgment pending decision by the Commissioner of Patents on certain petitions recently filed by the defendant for cancelling most of the certificates of registration relied on by the plaintiff or in the alternative for delay to take testimony respecting the invalidity of these certificates. The court denied this motion and defendant claims error. But there was no reason for the requested delay after completion of the full trial. Defendant's challenge to the validity of plaintiff's trade-mark registration could, and certainly should, have been prepared before trial. Further, there is no reason to expect success from this belated move; and if by chance it were successful, the relief granted below is justified by the findings of unfair competition, which were fully supported by the evidence as we have seen. We find no merit in defendant's further contention that the court was required to withhold its equitable relief on the purely conjectural possibility that defendant might so tardily show plaintiff to be tainted by unclean hands. The permanent injunction and the counsel fees awarded plaintiff were fully justified.

Turning to plaintiff's cross-appeal, plaintiff urges that a right to an accounting has become mandatory under the Lanham Act, 15 U.S.C. § 1117, thus superseding the earlier view, 3 Restatement, Torts § 747, that where the respective products were not directly competing, the plaintiff may not recover profits. We have held otherwise, however, and that now seems the settled construction of the statute. Triangle Publications v. Rohrlich, supra, 2 Cir., 167 F.2d at pages 973, 974; Chester H. Roth Co. v. Esquire, Inc., 2 Cir., 186 F.2d 11, 16, certiorari denied 341 U.S. 921, 71 S.Ct. 743, 95 L.Ed. 1354; Stardust, Inc. v. Weiss, D.C.S.D.N.Y., 79 F.Supp. 274, 281; Lorraine Mfg. Co. v. Lorraine Mfg. Co., D.C.N.J., 101 F.Supp. 967; see also Champion Spark Plug Co. v. Sanders, 331 U.S. 125, 67 S.Ct. 1136, 91 L.Ed. 1386. The court below found that plaintiff could not as yet show material damage. Plaintiff now says that the trial should have been in two stages, referring to certain patent cases. Cf. also 28 U.S.C. § 1292(4). The trial judge undoubtedly might in his discretion separate the issues and try them as convenient; but we know of no rule which would compel him to do so, particularly without warning or request therefor from a party. Denial of an accounting must therefore stand. Since, however, the plaintiff had to defend in this court to preserve its patently just judgment, it will be awarded appellate costs, together with additional attorney's fees of $500. R. F. C. v. J. G. Menihan Corp., 312 U.S. 81, 85, 61 S.Ct. 485, 85 L.Ed. 595; Century Distilling Co. v. Continental Distilling Corp., D.C.E.D.Pa., 102 F.Supp. 39.

Affirmed.