**CALVERT DISTILLERS COMPANY, a Corporation, etc., Plaintiff-Appellant,**

**v.**

**Frank A. WISH, doing business as Foremost Liquors, et al., Defendants-Appellees.**

**No. 12283.**

United States Court of Appeals
Seventh Circuit.

Sept. 8, 1958.

Rehearing Denied Oct. 10, 1958.

---

Patrick W. O'Brien, Louis A. Kohn, Chicago, Ill., Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., of counsel, for plaintiff-appellant.

Robert Karmel, Allen H. Schultz, Louis L. Biro, Chicago, Ill., Schultz, Biro & Karmel, Chicago, Ill., of counsel, for appellees.

Before FINNEGAN, SCHNACKENBERG and PARKINSON, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Plaintiff's action to enjoin defendants from selling plaintiff's products below the prices fixed by plaintiff pursuant to the Illinois Fair Trade Act [1] in defendants' retail liquor stores in Chicago, was dismissed by the district court for want of proof that the matter in controversy exceeds the sum of $3,000 exclusive of interest and costs.[2] Plaintiff has made no claim for damages, but relies upon its claim to injunctive relief against future irreparable injury.

In Seagram-Distillers Corp. v. New Cut Rate Liquors, 245 F.2d 453, we held that, in such a case, if defendant challenges plaintiff's allegations of jurisdictional facts, the burden is upon plaintiff to support those allegations by competent proof. The question now before us is whether the competent proof submitted in the case at bar was sufficient to sustain plaintiff's burden of establishing that the jurisdictional amount is involved. In Seagram-Distillers, at page 458, we referred to witness Lind, produced by plaintiff there. We quoted his testimony that, in a price war in the liquor market,

"* * * our product is subject to loss, and our business has been injured, *because we can measure it,* because we can see what happens to us in every jurisdiction where there is a price break."

We pointed out

"The measure to which he referred was not otherwise identified or produced in court. Whether the measure was accurate we do not know. * * *"

In the case at bar Lind testified for plaintiff (referring to defendants' stores), as follows:

"* * * that with these stores, the 19 stores, cutting at the rate of 60 cents per bottle or more that within a period of three months to six months the Calvert sales in the metropolitan Chicago area will go down by at least 40 per cent.

"I compute that on the basis of the same similar situations that have existed before in New York, Connecticut, Massachusetts, Florida, and Louisiana."

He also testified as to the average monthly sales of plaintiff and the profit per case and reached a mathematical conclu-

---

1. §§ 188–191, chap. 121½, Illinois Revised Statutes, 1957.

2. 28 U.S.C.A. § 1331.

sion that plaintiff's losses would be "in the neighborhood of $22,500 per month within 3 to 6 months". However, the "situations" in the named states, to which Lind referred, did not involve plaintiff's products. Defendants argue that plaintiff has never suffered any loss as a result of price-cutting on its products, but has rested its case solely on speculation as to what happened to an unrelated brand over 17 years ago. When asked specifically by plaintiff's counsel "Do you have any examples involving plaintiff's products, Calvert's in particular?", Lind answered:

"No, I don't think there are any cases where we have allowed our prices to go that way."

Moreover, plaintiff's counsel, at the time of trial, told the district court,

" *   *   *   we make no claim that we can measure any specific loss which has occurred so far." (Italics supplied.)

Actually plaintiff, prior to the time of the trial below, had had an experience in Chicago during a considerable period when defendants allegedly were unlawfully cutting the retail prices on plaintiff's products. Its complaint shows such price-cutting started as early as February 8, 1957 and continued to the time of the trial on June 27 and 28, 1957. This was a period of over four months. If this experience of price-cutting had demonstrated that plaintiff suffered any damage as a result thereof, it could have readily shown that fact by evidence. If it could not produce evidence of such actual *past* damage, we fail to see how the opinion testimony of Lind (and two other witnesses) proves the minimum jurisdictional requirement of threatened *future* damage. The admission by plaintiff's counsel that " *   *   *   we make no claim that we can measure any specific loss, *which has occurred so far.*" makes unconvincing plaintiff's contention that it met its burden of proving the measure in dollars of its loss likely to result *in the future* from defendants' acts.

The district court denied a motion of plaintiff for a rehearing of a prior order adverse to plaintiff. In the later order the court expressed the opinion, *inter alia,* that "the evidence of damages allegedly suffered and to be suffered in loss of future sales and deterioration of brands is speculative, remote and uncertain, and therefore insufficient to meet the requirements for injunctive relief or to satisfy the jurisdictional amount." From both orders plaintiff has appealed. For want of proof of jurisdiction, those orders are affirmed.

Orders affirmed.

FINNEGAN, Circuit Judge.

I filed a dissent to the majority opinion reported as Seagram-Distillers Corp. v. New Cut Rate Liquors, 7 Cir., 1957, 245 F.2d 453, discussed and relied upon in the current opinion. Regretfully, I am unable to join in this opinion since I cannot agree with what is said or the result reached.