## MARTINI & ROSSI, SOCIETA ANONIMA, v. CONSUMERS'–PEOPLE'S PRODUCTS CO., Inc., et al.

### No. E–5346.

District Court, E. D. New York.
July 7, 1931.

Maurice J. Moore and John Francis Moore, both of New York City, for plaintiff.

Rathkopf & Rathkopf, of New York City, for defendants.

MOSCOWITZ, District Judge.

This action is based upon alleged unfair competition. The plaintiff is a corporation organized under the laws of Italy and manufactures vermouth at Turin, Italy. It is the successor in business of a firm of the same name.

This vermouth is imported into the United States by the plaintiff and has been sold by it and its predecessor in business in the United States for the past thirty-eight years. Plaintiff's product is sold in bottles having affixed thereto four labels and a silver cap. The main body label was registered in the United States Patent Office by plaintiff's predecessor, Martini & Rossi, December 5, 1916, No. 114,260, and that registration was assigned to plaintiff by assignment recorded in the United States Patent Office.

Prior to the prohibition enactments sales in this country amounted to 200,000 cases of twelve bottles each per annum. Since 1922 plaintiff's vermouth has been a nonalcoholic product. Plaintiff's sales in the United States are 40,000 cases per year of twelve bottles each, and in Brooklyn the sales are from three to four thousand cases per annum.

Plaintiff has spent large sums in advertising its product. It expended $20,000 per annum in advertising from 1922 to 1929, and, from 1929 to 1931, $35,000 per annum.

The defendants are engaged in business in Brooklyn selling vermouth as a small part of its business, the sales of vermouth amounting to about $6,000 per annum, while plaintiff's sales are $400,000 per annum.

Plaintiff's labels are contained on a bottle marked "Plaintiff's Exhibit 1." Defendants' labels are contained on a bottle marked "Defendants' Exhibit 6."

While there was some testimony offered concerning similar labels in use by defendants' predecessors prior to 1928, such testimony was not convincing. The defendants have been making use of said labels, as shown in Plaintiff's Exhibit 6, in the sale of their product since 1928. Due to the small sales of defendants' product, plaintiff's attention was not called to such sales until shortly before this action was brought.

Defendant has raised the question of jurisdiction. It appears that the markings of the plaintiff are worth many thousands of dollars, and the amount in controversy is far in excess of the jurisdictional amount of $3,000.

A close examination of plaintiff's labels, Exhibit 1, and defendants' labels, Exhibit 6, shows certain differences, that is not the test. The test is, Are the labels so similar that the public is likely to be confused? The

general appearance of the defendants' bottles, the placing of the labels, and the labels themselves are almost identical with that of the plaintiff's product. The bottles, the coloring of the bottles, the size and shape of the bottles, the arrangement of the printed matter, the figures and the labels themselves, the coloring on the labels, and the general appearance of the labels on defendants' product are so similar to that of the plaintiff's that the ordinary purchaser would be confused.

In making purchases the purchaser does not have the two sets of labels before him, nor are the bottles side by side, the purchaser must depend upon his recollection of the appearance of the product which he intends to purchase. There is no doubt that the purchaser on a close examination of both products could find certain differences. However, purchases are not made in that manner, and that would be an unfair test.

An ordinary person would be misled in the purchase of the goods due to the similarity thereof if they were not displayed side by side. It is not necessary to analyze in detail the points of similarity. For every practical purpose the labels used by the defendants and the plaintiff are identical.

Decree for plaintiff. Settle findings and decree on notice.